Elisabeth TEUNISSEN, Appellant,

v.

ORKIN EXTERMINATING COMPANY, INC., Appellee,

and

Robinson Termite and Pest Control, Ltd., Defendant.

No. 91–802.

Supreme Court of Iowa.

May 13, 1992.

---

Amy S. Beattie of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellant.

Diane M. Stahle and David A. Tank of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

The defendant, a termite exterminator, contracted to inspect and treat a home for termites. After the home was sold, the new owner sued the defendant for negligently performing the contract. The district court sustained the defendant's motion for summary judgment, concluding the defendant owed no duty to the new owner. We agree and affirm.

The facts are not in dispute. In June 1988 Elisabeth Teunissen purchased the home which is located in Des Moines. Teunissen purchased the home from a bank which had acquired the property from Robert G. and Judith E. Wright in February 1988. After Teunissen moved into the home, she found termites covering her stairway. Teunissen investigated further and found that the home was indeed infested and severely damaged by termites. An estimate put the cost to repair the damage in excess of $25,000.

Before Teunissen purchased the home, Robert Wright contracted with Orkin Exterminating Company, Inc., to inspect and treat the home for termites. The contract is dated October 7, 1983.

The contract covered the initial treatment, which was guaranteed for two years. In addition, Wright purchased a limited lifetime renewable termite re-treatment guarantee. This additional guarantee was effective only upon payment of an annual renewal fee. The guarantee obligated Orkin to re-treat the home, at no extra cost, if an infestation of termites was found during the effective period of the guarantee.

A full lifetime renewable guarantee was also available. This guarantee obligated Orkin to re-treat and to repair any termite damage. Wright did not purchase this guarantee.

Wright paid the renewal fee on his guarantee in October 1985 and August 1986. However, he failed to pay the fee in 1987. As a result, the guarantee expired on October 7, 1987, several months before the bank acquired the property.

The sales contract between the bank and Teunissen required the bank to provide a termite inspection report before the sale was completed. The bank hired Robinson Termite and Pest Control, Ltd., to do the inspection. Apparently, Robinson visually inspected the property and reported that it found "[v]isible evidence of previously treated infestation, which is now inactive." The company's report is dated June 15, 1988, several weeks before the sale was finalized and title was transferred to Teunissen.

Teunissen moved into the home shortly thereafter but did not discover the termites until the following spring. It was at this point in time that Teunissen learned Orkin had originally treated the property. Teunissen promptly sued Orkin and Robinson. Robinson settled but Orkin did not.

Teunissen's suit against Orkin is based on negligence. She alleges two specific acts of negligence: (1) failure to properly treat and (2) failure to properly inspect.

Notwithstanding the limited guarantee, Orkin did pay Wright for damages to the house following a grievance report filed by Wright. The report states that the original treatment by Orkin was not proper or in accordance with the standard company treatment procedures. In addition, one of the parties Teunissen called to inspect and treat the home for termites felt that the prior treatment was not properly done. Workers discovered improper drilling and other problems in the prior treatment.

Following the district court's ruling sustaining Orkin's motion for summary judgment, Teunissen appealed.

I. The only issue here is whether Orkin owed Teunissen a duty, a threshold question in any negligence action. And that issue is a legal one. For this reason, resolution by way of summary judgment is proper. *Sankey v. Richenberger,* 456 N.W.2d 206, 207 (Iowa 1990).

II. Teunissen's allegations of negligence against Orkin raise the following question: Did Orkin owe a duty to Teunissen to perform its contractual obligations in a non-negligent manner? We think the answer to this question lies in two of our cases: *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969) and *Larsen v. United Fed. Sav. & Loan Ass'n,* 300 N.W.2d 281 (Iowa 1981).

In *Ryan,* we refused to require privity in accountant liability cases. We held that accountants owe a duty of care in those situations in which a party seeking recovery (1) is actually foreseen, (2) is a member of a limited class of persons contemplated, and (3) is a person for whose benefit and guidance the accountants know the information is intended. The rule was premised on the principle that the risk reasonably to be perceived defines the duty to obey. *Ryan,* 170 N.W.2d at 401–03. We explained the rule this way:

> When the accountant is aware that the balance sheet to be prepared is to be used by a certain party or parties who will rely thereon in extending credit or in assuming liability for obligations of the party audited, the lack of privity should be no valid defense to a claim for damages due to the accountant's negligence. We know of no good reason why accountants should not accept the legal responsibility to known third parties who reasonably rely upon financial statements prepared and submitted by them.

*Id.* at 401.

We applied the *Ryan* rule in *Larsen. Larsen,* 300 N.W.2d at 286. In *Larsen,* a home buyer sued a lender for damages sustained as a result of an allegedly negligent appraisal by an employee of the lend- · er. We phrased the duty issue this way: "Thus in determining whether a duty exists in this case, the key inquiry is whether [the lender] knew or should have foreseen that [the home buyer] would rely on its appraisal." *Id.* In upholding a jury verdict for the home buyer, we concluded there was substantial evidence to support the jury's finding that the lender knew or should have foreseen that the home buyer would rely on its appraisal. *Id. Cf. Williams v. Jackson Co.,* 359 So.2d 798, 801 (Ala.Civ. App.1978) (termite exterminator hired by lender may owe duty to home buyer to perform termite inspection in nonnegligent manner based upon exterminator's knowledge that home buyer was relying on inspection report).

III. Applying the *Ryan* rule as affirmed in *Larsen* to the undisputed facts in this case, we think the district court correctly concluded Orkin owed no duty to Teunissen. Teunissen was far removed from the picture when Orkin performed its treatment and inspection that Teunissen claims was negligently done. Teunissen was not even aware of the contract before she discovered the termites. So we can scarcely say she relied on Orkin to perform these services with care. Nor was Orkin aware that the property would be sold. So we can likewise scarcely say that Orkin actually foresaw that it was performing these services for the benefit of a prospective buyer.

We think one noted treatise writer's assessment of "duty" in negligence cases adequately explains the real basis for the *Ryan* rule and the result we reach here:

> [I]n negligence cases the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.
>
> ....
>
> ... *[I]t should be recognized that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.*

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* § 53, at 356–58 (5th

ed. 1984) (emphasis added). Considerations of policy led to the requirement of privity in the first place. Considerations of policy led to a relaxation of the privity requirement in *Ryan.* But we drew the line in *Ryan*, limiting the duty of a supplier of services to *known* third parties who reasonably rely on such services. Teunissen simply does not meet this test. So her interests are not entitled to legal protection against Orkin's action or lack of action.

AFFIRMED.