# IN THE SUPREME COURT OF IOWA

No. 104 / 05-1103 / 05-1110

Filed March 30, 2007

**MYRON J. RAAS**,

      Appellant,

vs.

**STATE OF IOWA**,

      Appellee.

_____

**MARK TRUNECEK,**

      Appellant,

vs.

**STATE OF IOWA**,

      Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Thomas M. Horan, Judge.

Plaintiffs in separate suits against State appeal from district court orders sustaining State's motions to dismiss. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED AS TO PLAINTIFF RAAS AND AFFIRMED AS TO PLAINTIFF TRUNECEK.**

Hugh G. Albrecht of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

**LARSON, Justice.**

This appeal involves separate suits against the State by Myron J. Raas and Mark Trunecek arising out of the escape of two inmates from the state prison system. The State moved to dismiss the petitions under Iowa Rule of Civil Procedure 1.421(1)(*a*) and (*f*) on the grounds the court lacked jurisdiction and the plaintiffs failed to establish a duty of care. The district court sustained the motions to dismiss. Plaintiffs appealed separately, and we consolidated the cases. The court of appeals reversed, and we granted further review. We now vacate the decision of the court of appeals, affirm the judgment of the district court as to Trunecek, and reverse and remand the judgment of the district court as to Raas.

## I. *Facts and Prior Proceedings.*

Because the cases were resolved under motions to dismiss, the only facts to be considered are those appearing on the face of the plaintiffs' petitions. Mark Trunecek and Myron Raas were injured by two inmates who escaped from the Iowa Medical and Classification Center in Oakdale, Iowa. Raas was attacked while in the parking lot of the Oakdale facility, where he had gone to visit a family member. Trunecek was attacked by the prisoners as he was fishing in the Iowa River near Swan Lake Road in Johnson County. The plaintiffs alleged that the prisoners' escape occurred as a result of the State's negligence in failing to properly supervise the inmates and failing to properly maintain and secure the facility. For purposes of reviewing the order dismissing the case under rule 1.421(1), we assume the facts alleged in the petitions are true.

## II. *Standard of Review.*

We review orders sustaining motions to dismiss for correction of errors at law. *Pennsylvania Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 810 (Iowa 2002). An order granting a motion to dismiss will be upheld only if

the petition, on its face, fails to state a cause of action upon which relief could be granted under any circumstances. *Fitzpatrick v. State*, 439 N.W.2d 663, 665 (Iowa 1989) (affirming order dismissing plaintiff's suit for damages based on injury caused by parolee from Iowa penitentiary). On a motion to dismiss, the petition should be construed in the light most favorable to the plaintiff, with all doubt resolved in the plaintiff's favor. *Id.*

**III.** *Discussion.*

To establish the plaintiffs' claims of negligence, they must prove that (1) the State owed them a duty of care, (2) the State breached or violated that duty of care, (3) its breach or violation was a proximate cause of their injuries, and (4) damages. *Kolbe v. State*, 625 N.W.2d 721, 725 (Iowa 2001). The issue in this case is whether the first requirement—a duty to the plaintiffs—was satisfied.

A. *The statutory-duty argument.* The plaintiffs argue that the State's statutorily imposed responsibility for the care of prisoners necessarily includes a duty to prevent their escape. Under Iowa Code section 904.102(4) (2003),

> [t]he Iowa department of corrections is established to be responsible for the control, treatment, and rehabilitation of offenders committed under law to the following institutions:
>
> . . . .
>
> 4. Iowa medical and classification center.

Obviously, this statute does not expressly provide a cause of action for a breach of the State's duty. We, therefore, must decide if a cause of action is implied. In *Kolbe*, 625 N.W.2d 721, we stated that, when a private cause of action is not expressly granted by statutes or administrative rules,

> [w]e . . . must employ the following four-factor test to determine whether a private cause of action against the State may be implied from the statute:

(1) Is the plaintiff a member of the class for whose benefit the statute was enacted? (2) Is there any indication of legislative intent, explicit or implicit, to either create or deny such a remedy? (3) Would allowing such a cause of action be consistent with the underlying purpose of the legislation? (4) Would the private cause of action intrude into an area over which the federal government or a state administrative agency holds exclusive jurisdiction?

*Kolbe*, 625 N.W.2d at 726–27 (quoting *Marcus v. Young,* 538 N.W.2d 285, 288 (Iowa 1995)).

The "most relevant inquiry" is whether there is any indication of legislative intent to create a private cause of action. *Id.* at 727; *accord Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S. Ct. 2479, 2489, 61 L. Ed. 2d 82, 96 (1979). The plaintiffs have not argued any of the *Kolbe* factors that would support a private cause of action under the statute. Most significantly, they have failed to point to any statutory language or administrative rule concerning responsibility for prisoners that suggests the legislature intended to create a private cause of action when it enacted section 904.102(4). Furthermore, we have held that the State Tort Claims Act, Iowa Code chapter 669, does not create any new causes of action, but only allows suits against the state that are allowed at common law against private individuals. *Kolbe*, 625 N.W.2d at 725; *Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990). The State Tort Claims Act merely

gives recognition to and a remedy for a cause of action already existing by reason of a wrong done but for which redress could not previously be had because of the common law doctrine of governmental immunity.

*Graham v. Worthington,* 259 Iowa 845, 861, 146 N.W.2d 626, 637 (1966); *accord Sanford v. Manternach,* 601 N.W.2d 360, 370 (Iowa 1999). We reject the plaintiffs' argument that they have a statutory basis for a cause of action against the State.

B. *The common-law duty argument.* The plaintiffs argue that the State owes them a common-law duty of care on which a cause of action may be based. In determining whether a defendant owes a legal duty to a plaintiff, three factors usually control: (1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations. *Kolbe*, 625 N.W.2d at 728.

The State argues that the public-duty doctrine precludes liability because any duty owed by the State is to the public at large, not to individuals such as these plaintiffs. Under the public-duty doctrine, " 'if a duty is owed to the public generally, there is no liability to an individual member of that group.' " *Id.* at 729 (quoting *Wilson v. Nepstad*, 282 N.W.2d 664, 667 (Iowa 1979)).

> We have routinely held that a breach of duty *owed to the public at large* is not actionable *unless the plaintiff can establish, based on the unique or particular facts of the case, a special relationship between the State and the injured plaintiff* consistent with the rules of Restatement (Second) of Torts section 315.

*Kolbe*, 625 N.W.2d at 729.

C. *Status of the public-duty doctrine.* We must first decide whether the public-duty doctrine is still viable in Iowa in view of our adoption of the State Tort Claims Act, Iowa Code chapter 669. Section 669.4 provides that,

> [t]he state shall be liable in respect to such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the state shall not be liable for interest prior to judgment or for punitive damages.

Exceptions to state liability are listed in section 669.14. However, the list of exceptions does not include claims subject to the public-duty doctrine. The plaintiffs argue the absence of a public-duty doctrine exception to state

liability indicates that the legislature did not intend for the State Tort Claims Act and the public-duty doctrine to coexist. Their claim is that

> [t]he "Public Duty Doctrine" is inconsistent and incompatible with the waiver of sovereign immunity [under] the State Tort Claims Act. Courts should no longer judicially impose this doctrine to prohibit [plaintiffs] . . . from seeking redress against the State for the wrongful actions of its employees.

In making this argument, the plaintiffs equate sovereign immunity with the lack of a duty under the public-duty doctrine. However, the principles involved are not the same.

> The public duty rule provides that where a municipality has a duty to the general public, as opposed to a particular individual, breach of that duty does not result in tort liability. The rule protects municipalities from liability for failure to adequately enforce general laws and regulations, which were intended to benefit the community as a whole. The public duty rule is not technically grounded in government immunity, though it achieves much the same results. Unlike immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place.

18 Eugene McQuillin, *McQuillin on Municipal Corporations* § 53.04.25 (3d ed. 2006).

Our cases decided after the adoption of the State Tort Claims Act continue to recognize the public-duty doctrine, and with the exception of the *Wilson* and *Adam* cases discussed below, they have clearly upheld the continued validity of the doctrine. *See, e.g., Summy v. City of Des Moines*, 708 N.W.2d 333, 344 (Iowa 2006); *Kolbe*, 625 N.W.2d at 729; *Sankey v. Richenberger*, 456 N.W.2d 206, 209 (Iowa 1990); *Bockelman v. State*, 366 N.W.2d 550, 554 (Iowa 1985); *Cubit ex rel. Cubit v. Mahaska County*, 670 N.W.2d 430, 2003 WL 21920399, at *2 (Iowa Ct. App. 2003); *Donahue v. Washington County*, 641 N.W.2d 848, 851 (Iowa Ct. App. 2002); *Allen v. Anderson*, 490 N.W.2d 848, 856 (Iowa Ct. App. 1992).

The plaintiffs contend that our prior cases of *Wilson*, 282 N.W.2d 664, and *Adam v. State*, 380 N.W.2d 716 (Iowa 1986), cast doubt on the continued validity of the public-duty doctrine. However, in *Kolbe* we distinguished *Wilson* and *Adam* on the basis that the statutes involved in those cases were not aimed at the protection of the public in general (as required by the public-duty doctrine), but to narrow groups of persons, thereby establishing special relationships and making the public-duty doctrine inapplicable. *Kolbe*, 625 N.W.2d at 729. Contrary to the plaintiffs' argument, *Wilson* and *Adam* did not eliminate the public-duty doctrine.

In *Kolbe* we recognized that the public-duty doctrine is still viable despite enactment of the State Tort Claims Act: "Because we conclude there was no . . . duty [under the public-duty doctrine], we need not address the immunity issue." *Kolbe*, 625 N.W.2d at 725. Although, as the plaintiffs point out, other jurisdictions have held their tort claims statutes to have abrogated the public-duty doctrine in those jurisdictions, we conclude that both doctrines are alive and well in Iowa.

D. *Claimed basis of common-law liability.* The plaintiffs acknowledge that generally a person has no duty to control the conduct of others. However, they argue that there are "special relationships" between themselves and the State that make the general rule inapplicable. They also contend that special relationships make the public-duty doctrine inapplicable. *See id.* at 729. In support of these arguments, the plaintiffs rely principally on two provisions of the Restatement (Second) of Torts. Under section 315,

> [t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor [State] and the third person [prisoner] which imposes a duty upon the actor to control the third person's [prisoner's] conduct, or

(b) a special relation exists between the actor [State] and the other [victim] which gives to the other [victim] a right to protection.

Restatement (Second) of Torts § 315 (1965) [hereinafter Restatement].

Additionally, section 319 provides:

One [State] who takes charge of a third person [prisoner] whom he knows or should know to be likely to cause bodily harm to others [victims] if not controlled is under a duty to exercise reasonable care to control the third person [prisoner] to prevent him from doing such harm.

We have considered Restatement section 319 in tandem with section 315 in several cases, including *Leonard v. State*, 491 N.W.2d 508, 510-11 (Iowa 1992); *Sankey*, 456 N.W.2d at 209; and *Fitzpatrick*, 439 N.W.2d at 666-67. In *Leonard* a mental health patient, Parrish, was released by the state. The patient assaulted Leonard, a member of the public, who sued the state hospital, claiming a breach of duty under Restatement sections 315 and 319. We said:

There can be little doubt that a special relationship existed between Parrish [the patient] and his treating physician at MHI [the state hospital]. His continuing involuntary commitment only serves to reinforce that bond. Therefore MHI had a duty to control Parrish's conduct, or at least not negligently release him from custody. *But the Restatement rules cited above [sections 315 and 319] do not answer the precise question before us: Does the duty to refrain from negligently releasing dangerous persons from custody run from the custodian to the public at large or only to the reasonably foreseeable victims of the patient's dangerous tendencies?*

*Leonard*, 491 N.W.2d at 511 (emphasis added). We answered the question this way:

In analogous cases in Iowa, this court has viewed the duties described in Restatement sections 315 and 319 quite narrowly, guided by the principle that the scope of the duty turns on the foreseeability of harm to the injured person. *See, e.g., Sankey*, 456 N.W.2d at 209-10 (neither city ordinance nor common law imposed duty upon police chief to protect city officials from shooting spree in city council chambers); *Fitzpatrick v. State*, 439 N.W.2d 663, 667-68 (Iowa 1989) (parole

officer had no legal duty to police officer injured by parolee)
. . . .

> The foregoing cases also reflect strong public policy concerns about the potential for limitless liability when an individual's decision might affect the general public.

*Id.* at 511-12. Under the *Leonard* line of cases, the State's duty to protect victims from injury inflicted by escaped patients or prisoners extends only to those persons who are reasonably foreseeable as victims.

### IV. *Disposition.*

The plaintiff, Raas, alleged he

> was lawfully in the parking lot of the Oakdale Facility having gone to the facility that day during the regularly scheduled visiting hours to visit a family member incarcerated at the facility.

Assuming this allegation to be true, and viewing it in the light most favorable to Raas, as we are required to do, we believe it is sufficient to allege his status as an invitee and, as such, a person who was reasonably foreseeable as a victim. Under *Leonard* he has therefore stated a sufficient cause of action by establishing a special relationship. We therefore reverse the district court's order dismissing his case.

In contrast, according to Trunecek's petition, he was not on the premises of the facility, but was fishing in the Iowa River. We conclude that, even giving his petition the most favorable interpretation, he has not alleged the status of a foreseeable victim, but only a member of the public at large. As such, he may not claim a special relationship sufficient to establish a cause of action. We therefore affirm the district court's dismissal of his case.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED AS TO PLAINTIFF RAAS AND AFFIRMED AS TO PLAINTIFF TRUNECEK.**

All justices concur except Hecht and Appel, JJ., who take no part.